YAZOO & M. V. R. Co. *v.* L. L. PEEPLES.

[64 South. 262.]

1. EVIDENCE. *Judicial notice. Common knowledge. Carriers. Limiting liability. Agreed value. Market value. Injury to goods.*

   It is a matter of common knowledge and need not be proven that freight can ordinarily be transported by rail from Concord, Georgia, to Grenada, Mississippi, in much less time than thirty-one days, and consequently a delay for such length of time in the transportation of freight from one of these places to the other, unexplained is unreasonable.

2. CARRIERS. *Limiting liability. Agreed value.*

> In a suit by a fruit agent against a carrier for injury to fruit trees caused by delay in shipment, where the evidence did not disclose that the lower freight rate, granted the shipper because of the valuation placed by the shipper upon the trees, was based upon a schedule of rates filed with and affirmed by the Interstate Commerce Commission, the trial court correctly permitted the shipper to recover the true value of the trees injured.

3. CARRIERS. *Loss or injury to goods. Market value.*

> Where in a suit by a fruit tree agent against a carrier for injury to fruit trees, caused by delay in shipment, the only evidence of value introduced on the trial was the price at which he had sold them, this in the absence of evidence to the contrary, was sufficient to establish their market value, the sales having been made in the usual way and there being no evidence of fraud or collusion therein.

APPEAL from the circuit court of Grenada county.

HON. G. A. McLEAN, Judge.

Suit by L. L. Peeples against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.

Appellee, who was plaintiff in the court below, was a fruit tree agent and had made contracts for selling fruit trees, aggregating the sum of four hundred and seventy-five dollars. Said trees were to be shipped to him for delivery at Grenada, Mississippi, by a nursery in Concord, Georgia. The shipment was made on November 18, 1910, *via* Southern Railway Company to Greenwood, Mississippi, thence over the Yazoo & Mississippi Valley Railroad Company to Grenada. The trees reached their destination on December 19, 1910. When they were unpacked it was found that many of them had perished in transit and were unfit for use. The balance of the trees were sold for two hundred and fifty dollars, and the appellee sued the appellant, the last carrier, for the difference of two hundred and twenty-five dollars, representing the amount of his loss. The waybill showed that the trees were delivered to the appellant at Greenwood,

a distance of twenty-eight miles from Grenada, on November 30, 1910. The defense relied upon to defeat liability is that the shippers at Concord, Georgia, contracted with the Southern Railway Company, the initial carrier, for the shipment of these trees at reduced rate (about half the regular rate) upon condition that the liability should be limited to three cents per hundred pounds on the shipment, which in this instance would amount to sixty-six dollars. The railroad also contended that the plaintiff was not entitled to recover for the reason that he had already sold part of the trees for more than the entire shipment cost him, and that the measure of damages was the initial cost of the trees, and not the selling price. There was no evidence of the market value of the trees other than the price for which they had been sold by the plaintiff. Defendant also contends that the plaintiff has failed to show what constitutes a reasonable time for shipments of freight to be transported from Concord, Georgia, to Grenada, Mississippi, and that, having failed to make such proof, he cannot claim that thirty-one days is an unreasonable delay.

*Mayes & Mayes,* for appellant.

The plaintiff utterly failed to make out his case against the defendant, because he failed to prove that an unreasonable length of time was consumed in transporting the trees from Concord to Grenada. Let us see what is the measure of damages in this case, and what proof has been made thereunder.

The special contract of shipment which was openly and fairly entered into by the parties provides: The amount of any loss or damage for which any carrier is liable, shall be computed on the basis of the value of the property (being the *bona fide* invoice price, if any, to the consignee, including the freight charges, if prepaid), at the place and time of shipment.'' We take this to mean that the measure of damages shall be the difference be-

tween invoice price of the trees (in good condition) and their market value at Concord, in their damaged condition.

Has the plaintiff proven the invoice price of these trees? Yes, it was two hundred dollars. Has he proven their market value at Concord, in their damaged condition? No, he has not. There is nowhere in the record any testimony as to what was the market value of these trees at Concord in their damaged condition. Then how can this court tell what was the difference between the invoice price (two hundred dollars) of the trees and their market value at Concord in their damaged condition? The court cannot do it. Therefore, plaintiff has failed to prove any actual damage.

Should the court not agree with us that the above is the correct measure of damages, then we say that the measure of damages is the difference between the market value of the trees at Concord in their good condition, and their market value at the same place, in their damaged condition.

Has the plaintiff proven any actual damages under the last-mentioned rule for measuring his damage? No, he has not. Nowhere in the record is there any proof of what was the market value of these trees at Concord, in their good condition, nor is there any proof of what was their market value there, in their damaged condition. Without that proof, the plaintiff's actual damage cannot be ascertained. Should the court not agree with us on either one of the above rules for measuring the damages, then we say that we are forced back to the old common-law rule, which is the difference between the market value of the trees at Grenada, in good condition, at the time when they ought to have reached there, and their market value at Grenada in their bad condition, on the day they did reach there, with interest. See 5 Am. & Eng. Ency. Law, p. 384; 46 Miss. 729; 46 Miss. 458.

Has plaintiff proven the market value of the trees in good condition, at Grenada? He certainly has not. Has he proven the market value of the trees in their damaged condition, at Grenada? He certainly has not. Then we ask, how is this court going to say what were plaintiff's actual damages, since it cannot compare these market values?

We have carefully read opposing counsel's brief, and we do not think that he even pretends to have made proof of the market values of these trees. But he is trying to recover on an entirely different theory. The question now is, is his theory correct.

The plaintiff contends that he is entitled in this case to recover the difference between what he sold these trees for, in their damaged condition, two hundred and fifty dollars, and the aggregate of the prices which they would have brought under his contracts of resale, four hundred and seventy-five dollars. In other words, the plaintiff is seeking to recover an alleged lost profit of two hundred and twenty-five dollars.

This court will readily agree with us that such profits cannot be recovered in this case for two reasons: First, because the railroad company was not informed, and did not know that these trees were being sent to Grenada for resale; second, because such profits are only speculative.

The loss of these profits which would have accrued on the resale of these trees are special damages, and it is a well-established and well-understood rule of law that special damages cannot be recovered, unless it is shown that such damages were clearly within the contemplation of the parties at the time the contract for transportation was entered into.

The case of *White* v. *Leatherberry*, 82 Miss. 103, which is cited in plaintiff's brief, and upon which plaintiff relies, does not support plaintiff's case at all. Besides the many other differences, between the case in 82 Miss., and

the case at bar, there is one difference which is of especial importance.   In the case in 82 Miss., the defendant knew that the logs were being purchased for resale, and that the result of his failure to perform his part of the contract would be a loss of profits by the plaintiff. But in the case at bar, the defendant did not know that the trees were to be resold, nor did he know that a loss of profits would result from a delay in transportation.

In the case in 82 Miss., the court said particularly, that proof that the defendant had knowledge at the time the contract was made, of the purposes to which the plaintiff intended to put the logs, and that defendant had knowledge of the fact that a loss of profit would likely result from a breach of the contract, is a prerequisite to plaintiff's right to recover for lost profits.

We are of the opinion that the case cited and relied upon by the plaintiff is more properly one in support of our contention than it is in support of the contention of the plaintiff.

Besides all that we have already said, we are thoroughly convinced that the profits such as plaintiff seeks to recover, are speculative, and too remote to be considered an element of damage.   These profits depend upon too many uncertain things.

Now, to come back to our starting point:   We said that the court erred in instructing the jury that they could award the plaintiff such damages as the evidence showed he had sustained, because there was no competent evidence that the plaintiff had sustained any actual damage.   If the court thinks that the plaintiff has successfully shown negligent delay, then, on account of the bare breach of duty owed by defendant, to transfer the shipment without unreasonable delay, the defendant is liable for nominal damages, but for nothing more, because plaintiff has not proved any actual damages. Therefore, instead of giving the second instruction, as it appears on page 28 the court should have instructed the

106 Miss. 39

jury as follows: "The court instructs the jury to find for the plaintiff, and assess his damages at some nominal sum."

*S. A. Morrison,* for appellee.

This is a clear case of negligence in transportation of the fruit trees; thirty-one days in making a distance heretofore covered at the longest period in six days; nineteen of those days were passed with this shipment billed out only twenty-eight miles away from its point of destination. A common carrier can, to a certain extent, limit its liability as an insurer of freight by contract entered into by both parties with clear understanding of all the terms thereof. *Railroad Co.* v. *Ins. Co.,* 79 Miss. 14. But a common carrier cannot limit its liability by contract or otherwise against its own negligence. *I. C. R. R. Co.* v. *Bogard,* 78 Miss. 11 and cases therein cited.

The sole effort, if any effort at this was made, by the defendant, was to the effect that it had contracted against any loss to this shipment of trees by the terms of its bill of lading in giving two rates or offering two rates, one of which was less than the other and as contended by defendant the consignor accepted the lower rate, thereby releasing defendant from any loss even from its own negligence, even the cases relied on by defendant in lower court utterly fail to sustain its position, the case cited in 79 Miss. 14, being one relied on by defendant. And this case holds directly contrary to any such doctrine.

It is well settled by our court that a "common carrier cannot stipulate for any less risk than that it shall not answer for accidents and casualties, which prudence cannot provide against." *Railroad Co.* v. *Weiner,* 49 Miss. 725; *Railroad Co.* v. *Abels,* 60 Miss. 1017; *Express Co.* v. *Hunnicutt,* 54 Miss. 566; *Railroad Co.* v. *Faler,* 58 Miss. 911; *Express Co.* v. *Seide,* 67 Miss. 609; *Johnston* v. *Railroad Co.,* 69 Miss. 191.

The trial court therefore committed no error in excluding testimony concerning such contract for exemption from liability, where defendant made no effort to exculpate itself from the clear case of negligence in transportation of the shipment. It was the duty of the defendant, if relying in any way on this so-called contract for exemption from liability, to disprove negligence arising from the terms of the contract, from the character of its occupation, and from the rule of evidence requiring the facts to be proved by that party in whose knowledge they peculiarly lie. *Railroad Co.* v. *Moss,* 60 Miss. 1003; 45 Am. Rep. 428 and citations *supra.*

Not even an attempt to show *prima facie* that same did not result from its neglect. See further on this subject, *I. C. R. R. Co.* v. *Scruggs,* 69 Miss. 418; *Kansas City S. R. R. Co.* v. *Holland,* 68 Miss. 351; *Railroad Co.* v. *Bigger,* 66 Miss. 319; *I. C. R. R. Co.* v. *Trounstrine,* 64 Miss. 834.

The goods were received by the initial carrier in good condition, as shown by the testimony of Smith, of Smith Brothers, but when received by the consignee the shipment was in bad condition and the trees practically destroyed; so much so, that nearly half of this large shipment was lost, all because the defendant, which assumed all liability by not responding to the demand made by plaintiff on it for information as regard to same, duly served on defendant thirty days and more before suit was filed against it.

The principles of law set forth in the above decisions of our court fully answer all effort made in the court below on the single ground on which defendant contested the claim.

SMITH, C. J., delivered the opinion of the court.

That freight can ordinarily be transported by rail from Concord, Georgia, to Grenada, Mississippi, in much less time than thirty-one days is a matter of common

knowledge, and consequently a delay for such length of time in the transportation of freight from one of these places to the other, unexplained, is unreasonable. The court therefore committed no error in instructing the jury to find for appellee.

Since the evidence did not disclose that the lower freight rate, granted appellee because of the valuation placed by the shippers upon the trees, was based upon a schedule of rates filed with and approved by the Interstate Commerce Commission, the rule announced in *Express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, has no application, and the court below correctly permitted appellee to recover the true value of the trees injured.

Appellee was entitled to recover the market value of these trees. The only evidence of value introduced on the trial was the price at which he had sold them, and this, in the absence of evidence to the contrary, was sufficient to establish their market value, the sales having been made in the ordinary and usual way and there being no evidence of collusion or fraud therein. 13 Ency. of Evidence, 538, and authorities there cited.

No assignment of error having been filed by appellee and cross-appellant, the matters by him complained of are not presented to us for review.

*Affirmed.*